IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LEANNE RENEE KIDD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:10-cv-871-WHA |
| | ) (WO) |
| MANDO AMERICA CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Defendant, Mando America Corporation ("MAC"), on January 27, 2012 (Doc. # 44). The Plaintiff, Leanne Renee Kidd ("Kidd"), filed a Complaint alleging the following: Count One – hostile work environment, Count Two – Title VII gender discrimination, Count Three – racial discrimination and harassment under Title VII and § 1981, Count Four – national origin discrimination, Count Five – retaliation, Count Six – negligent or wanton hiring, training, supervision, and retention, and Count Seven – intentional infliction of emotional distress on October 15, 2010 (Doc. # 1). Kidd filed a Response to MAC's Motion for Summary Judgment (Doc. # 54) on February 28, 2012, and MAC filed a Reply to Kidd's Response (Doc. # 55) on March 6, 2012.

The court has federal question subject matter jurisdiction over the federal claims and supplemental jurisdiction over the state law negligence and intentional infliction of emotional distress claims. *See* 28 U.S.C. § 1331, 28 U.S.C. § 1367.

For the reasons to be discussed, the Defendants' Motion for Summary Judgment is due to be GRANTED.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the non-movant must be

believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III.  <u>FACTS</u>

The following is an account of the relevant facts with all justifiable inferences drawn in favor of Kidd[1]:

MAC is located in Opelika, Alabama, and produces products for different automotive manufacturers.  MAC's main customers are General Motors, Chrysler, and Ford in Detriot, Michigan; Hyundai Motors Manufacturing in Montgomery, Alabama; and Kia Motors Manufacturing in West Point, Georgia.

Leanne Kidd is a Caucasian female from the United States who has a Bachelors Degree with a double major in accounting and management.  Kidd was working on a Masters in Public Accounting degree in 2009, which she completed in 2010.  Kidd worked in the accounting department of MAC from January 2008 until September 2010 when she resigned.  When Kidd was hired, Tim Anderson was Assistant Accounting Manager, B.J. Cheong was the Accounting

---

[1] Kidd's attorney makes the bold assertion that MAC's "fact citations are negligent at best, intentionally misleading at worst, and often do not support the propositions for which they are cited."  The court does not consider this intemperate general allegation of professional misconduct to be appropriate in a brief.  This is particularly troubling considering some of the fact citations that Kidd makes which will be addressed by the court in this memorandum opinion. The court makes it clear that it will not accept specific mischaracterizations of fact in its consideration of MAC's Motion for Summary Judgment.  The court will disregard any mischaracterizations of fact by anyone, and instead accept the facts from the record drawing all *justifiable* inferences in favor of Kidd.

Manager, Henry Lee was Chief Financial Officer for MAC, and Tae Kwak was President of MAC. Cheong, Lee, and Kwak are Korean males. MAC terminated Anderson in March 2008 for performance reasons.

Upon Anderson's termination, Kidd believed that she adopted Anderson's entire set of job duties. According to Kwak's undisputed testimony, Anderson's position included Accounts Payable, Accounts Receivable, Tax, Financing, all the reporting responsibilities, and closing responsibilities. Kidd admits that she never handled Accounts Receivable but rather Accounts Payable, wires, and the general ledger. Some employees of MAC did believe that Kidd was assisting in managing the accounting department, but Kidd explained that MAC does not take job titles very seriously. After performing some of Anderson's duties for awhile, Kidd complained in July 2008 that she deserved a promotion and raise. Since she believed that she was performing the entirety of Anderson's job duties, she thought that she deserved his title.

Cheong recognized that Kidd had taken on more responsibilities since Anderson's departure, and he told her that MAC would promote her after she had been with the company for a year. Kidd does not claim that he promised her the position of Assistant Accounting Manager. After her one year anniversary, despite still maintaining her increased work load, Kidd was not given a promotion or raise; however, Kidd was already the highest paid accountant in the department. Kidd also believes that there were no complaints about her job performance, but Kidd's citation to the record to support this claim, Doc. # 49-1, comes from the deposition of the Senior Human Resources Manager at MAC, Jerry Rolison, who explained that he could not remember if Kidd had any complaints against her. *Id*. at 191:21-192:16.

4

In 2009, a few months after Kidd's one-year anniversary, MAC began to search for a new Assistant Accounting Manager to fill the void left by Anderson.  Kwak and Lee conducted a silent search as to this position, and it was their intent to groom the new Assistant Accounting Manager into the new Accounting Manager.  MAC had no women in management positions and few management positions were filled by non-Koreans.  Kidd testified that the ultimately successful candidate, B.W. Seo, was the only Korean interviewed and that he was selected through a different channel than anyone else, but Kidd never explains what that channel was.  Kwak's undisputed testimony is that MAC was facing financial auditing challenges, so MAC was interested in finding someone with that specialty to take over the Assistant Accounting Manager role at MAC.  Kwak testified that because MAC was searching for an individual with auditing experience, Lee sought a recommendation from MAC's external auditing company as to an individual with both management and auditing experience.  That company recommended Seo.  Kidd testified that MAC never posted the Assistant Accounting Position internally or externally, and she received no notice from MAC that it was trying to fill this position.  Kidd testified that she would have applied for the position if she had known about it.

Kidd testified that MAC usually posts vacancy announcements when it is looking to fill positions, but Kwak and Lee deviated from this normal procedure and instead had the human resources department collect resumes of potential applicants for the Assistant Accounting Manager position.  Scott Wren from the human resources department conducted telephone interviews with these potential applicants.  Seo's resume was not one of the ones collected by the human resources department, but was instead recommended by the external auditing company.  Accordingly, Seo was not interviewed by Wren.  Instead, Kwak and Lee, who are the relevant

decision makers at MAC for this position, interviewed Seo.  Seo's first interview with the company was via telephone with Kwak and was conducted in English.  Ultimately, Seo was selected to fill the vacant Assistant Accounting Manager spot and was hired by MAC in September 2009.  Kidd testified that some time after MAC had decided to hire Seo, it placed an ad in the newspaper for a different, non-existent position, and Rolison testified that the other position that was placed in the newspaper, for a "controller," was done to fulfill visa purposes for Seo.

Seo is a male who was born in Korea, and his job prior to taking the position at MAC was in Australia for Sun Microsystems.  Seo has a Bachelor's Degree in accounting, and started, but did not finish, an MBA degree.  Kidd's assessment of Seo's work experience is that he did not have the broad base of accounting experience she believed was necessary for the job, and that Seo had only been an auditor.  Her testimony goes on further to explain that she only saw a one page resume for Seo.  However, during her deposition, she was presented with Seo's actual six page resume which had other job listings on it that clearly demonstrate that Seo's previous work experience included more than simply auditing work.  Kidd does testify and Seo's resume demonstrates that Seo never held the title of Assistant Accounting Manager at any other company.  It is also undisputed that Kidd did not have a say in what the job requirements were for the Assistant Accounting Manager position.  Instead, Kwak and Lee had the responsibility to determine the qualifications for the Assistant Accounting Manager.  The key requirements established by Kwak and Lee were that the individual have a broad accounting background and auditing experience, which was particularly important given the current financial situation at

MAC.  Kwak and Lee made no requirement that the Assistant Accounting Manager be able to speak Korean.

Immediately after Seo was hired, Kidd went to Rolison to ask why she was not considered for the job, and Kidd testified that Rolison told her that MAC refused to even consider an American candidate.  Kidd also testified that someone in the human resources department had told her that no American would ever be in management at MAC.  Kidd testified that Rolison told her that he thought Seo was not qualified for the Assistant Accounting Manager position, but her citation to Rolison's deposition for this fact asserts nothing of the sort.  In fact, her citation, Doc. # 49-1 at 8:5-7, is to a statement by Rolison that he is the most senior person in the human resources department.  Despite this erroneous citation, it is clear that Kidd testified that Rolison told her that Seo was unqualified.  It is undisputed that neither Rolison nor any other human resources department employee had the power to hire the Assistant Accounting Manager.  Moreover, Kidd believes that Seo misrepresented his background to MAC when he interviewed with MAC because his resume does not explicitly state management experience even though he told MAC management that he had been assistant manager for at least two prior companies.  Kidd admits that these may just be typographical errors, but if these were just typographical errors, then his lack of clarity in resume writing supports her claim that he was not qualified for the Assistant Accounting Manager job.

Four days after starting at MAC, Seo asked for Kidd's resume, and, according to Kidd, degraded her, belittled her, and essentially told her that she was stupid.  Kidd also testified that her resume was the only one collected, but Seo's testimony as well as Wren's testimony make it

clear that Seo requested resumes for every member of the accounting department, even if he did
not tell Kidd that he was doing so at that time.

Kidd filed many complaints about how she was being treated by Seo and Cheong.  She
filed the following complaints: in September 2009 she complained about Cheong's policy on
sick days; on October 1, 2009, she complained about being asked for her resume and being
talked down to, which she believes was due to her not being a Korean man; on January 26, 2010,
she complained about the demeaning comments made by Seo about her and the other women in
accounting; on February 16, 2010, she complained about Seo and Cheong flagrantly showing
favoritism towards the Koreans while reprimanding the non-Koreans; on February 18, 2010, she
complained about how she had been made to feel like a horrible employee over the prior 5
months; on February 19, 2010, Kidd filed an EEOC charge; and on August 4, 2010, she
complained about a lack of respect and her constant fear that she was going to be fired by Seo.
Kidd filed her complaints with the human resources department and met mostly with Rolison.
Kidd testified that Rolison told her that the Koreans were off limits and that he was not allowed
to reprimand them in any way, shape, or form for any behavior.

Kidd  testified that Seo told her soon after her October 1, 2009 complaint that she had no
right to go to the human resources department, and she was told to not contact anyone other than
him if she had problems with him.  She was also called a "school student."  Kidd testified that
after she filed her October 1, 2009 complaint concerning Seo's request for her resume, some of
her job duties were taken away.  Kidd also testified that she was slowly relieved of her job
responsibilities over the next few months.  She also testified that Seo yelled at her, told her she
was not doing a good job, closely monitored her hours, and refused to let her take time off.  Kidd

explains that she was not invited to department functions and was not given rewards for good performance.  Also, Kidd testified that after she made her first complaint Korean management cultivated a false perception that she was a difficult employee to work with and a complainer.

Ultimately, Kidd submitted her resignation on September 2, 2010, which was to take effect on September 16, 2010.  In her resignation letter, Kidd stated that she "thoroughly enjoyed" her time at MAC and wished the company success in the future.  Kidd explained that MAC was not the worst place that she worked.  After receiving Kidd's resignation, Seo recommended that Sheppard, a white American female, be promoted from her job as the Accounts Payable Clerk to the Accounts Payable Accountant to replace Kidd.  Kidd was upset by this promotion because she thought Sheppard was not qualified for her position.  On September 15, 2010, Kidd emailed Kwak and Rolison to inform them that promoting Sheppard was the "last straw" in a series of degrading treatment.

## IV.  **DISCUSSION**

Considering the facts in this case in a light most favorable to Kidd, it appears that the grounds for Kidd's claims revolve around the following incidents: Tim Anderson's firing, Kidd's absorption of some of his work, her being promised a promotion, B.W. Seo receiving the Assitant Accounting Manager position, Kidd not being considered for the position, B.W. Seo's request for Kidd's resume, and MAC management's limiting Kidd's job duties.  In her Complaint, Kidd made reference to many other incidents that occurred during her employment which were to serve as grounds for her claims, but Kidd makes no specific reference to any of those in her Response Brief.  For instance, Kidd makes little or no reference to the following

issues: the holiday 2009 shutdown, leaving without permission, alleged time off issues, the "old stove" comment, the "Korean only" dinners, corporate housing, and her coworkers' weddings. Moreover, Kidd does not allege any adverse employment actions as required in discrimination and retaliation claims as to those facts. Accordingly, the court must assume that Kidd has abandoned those as grounds for her various claims, and, as such, those allegations are not part of the facts considered by the court in ruling on MAC's Summary Judgment Motion.

A.  <u>Demotion Claim</u>

Turning to Kidd's claims, the court will address a demotion claim argued by Kidd in her Response (Doc. # 54 at 18, *et seq.*) to MAC's Motion for Summary Judgment.  Kidd attempts to raise a demotion claim for the first time in her Response.  There is no such claim in her Complaint.  While it is true that the Supreme Court has mandated a liberal pleading standard, the Eleventh Circuit has explained that "[l]iberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint. The proper procedure for [Kidd] to assert a new . . . claim was to seek to amend her complaint." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Accordingly, in so much as Kidd is attempting to raise this new issue in her Response Brief, that claim is barred at this time.[2]

---

[2] Interestingly, Kidd raises concern about MAC putting her at a disadvantage by making her speculate as to MAC's non-discriminatory reasons for demoting her.  Moreover, Kidd argues that MAC "mischaracterizes the summary judgment evidence, . . . and completely ignores that Kidd was already filling the accounting manager position when Mando hired Seo.  This proffered reason makes almost no sense in the context of a demotion . . ." (Doc. # 54 at 20). However, Kidd never alleged a demotion claim in her Complaint (Doc. # 1), nor does any form of the word "demotion" appear anywhere in Kidd's Complaint or her 455 page deposition.

### B.  Hostile Work Environment Claim

In her response brief, Kidd advised the court that she is abandoning her Hostile Work Environment claim.  Accordingly, the court will consider Kidd's Hostile Work Environment, Count One, as abandoned.

### C.  Failure to Promote Claims

#### I.  Prima Facie Case

Kidd's Counts Two, Three, and Four allege claims of discrimination on behalf of MAC as to her gender, race, and national origin respectively.  The main factual ground that Kidd relies on as to the issue of discrimination is the hiring of B.W. Seo as the Assistant Accounting Manager. Therefore, pursuant to *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), all of Kidd's other discrimination claims are considered abandoned by the court.  Accordingly, the court will limit its analysis as to discrimination solely to the B.W. Seo hiring, which amounts to a failure to promote claim.

In order for Kidd to make out a prima facie case of failure to promote, she must demonstrate that "(i) [she] belonged to a protected class; (ii) [she] was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, [she] was rejected; and (iv) the position was filled with an individual outside the protected class." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005) (citing *McDonnel Douglas*

---

Therefore, the accurate explanation for MAC's allegedly putting Kidd to a disadvantage by making her speculate is actually a failing on the part of Kidd to ever bring this claim before the court.

*Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The Eleventh Circuit has also held that "where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post." *Id.* (citing *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992)).  However, the employee must still show that she was qualified for the position in order to make out her prima facie case for discrimination.  *Jones*, 977 F.2d at 533.

If Kidd is able to demonstrate her prima facie case, she will create an inference of discrimination which MAC will have the burden to disprove by articulating a non-discriminatory basis for its employment action.  *See Vessels*, 408 F.3d at 767 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  If MAC is able to meet this burden, the inference of discrimination evaporates, and Kidd will have the opportunity to demonstrate by a preponderance of the evidence that MAC's proffered reasons are pretextual.  *Id.* at 768 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)).  Only if Kidd succeeds in discrediting MAC's reasons can the trier of fact conclude that MAC intentionally discriminated against Kidd based on her gender, race, or national origin.  *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Turning to the facts of the case, it appears that Kidd has not satisfied her prima facie case for discrimination.  Kidd is an American, Caucasian female and is therefore a member of protected gender, race, and national origin classifications.  Kidd never applied for the Assistant Manager position, and the facts taken in a light most favorable to Kidd illustrate that MAC never formally announced the position posting.  Moreover, Cheong and Kwak both knew that Kidd

12

wanted a promotion for the work that she was doing after Anderson had left MAC, and therefore, MAC had reason to consider her for the job.  The *Vessels* case makes it clear that if MAC did not formally announce a position for which it had reason to consider Kidd, then Kidd does not need to demonstrate that she applied for the job to meet the second prong of the prima facie case.  408 F.3d at 767.

However, Kidd must still prove that she was qualified for the position in order to meet the second prong in a failure to promote claim.  It is undisputed that Kwak and Lee were the relevant decision makers as to the hiring of the Assistant Accounting Manager, and as such, would be responsible for defining the qualifications for that job.  Kidd's assertions about what she thought the qualifications to be are immaterial, as is her questioning the business judgment of MAC.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1020 (11th Cir. 2000) (explaining that an employee may not substitute her business judgment for the employer's, and an employee cannot succeed in rebutting the employer by "simply quarreling with the wisdom" of the employer).   As stated above, one of the central aspects that Kwak and Lee were looking for in an Assistant Accounting Manager was auditing experience because of the increased financial auditing issues facing MAC.  Furthermore, the evidence shows that Lee sought out recommendations from MAC's external auditors about who would be able to perform auditing tasks in the context of accounting management.  The other qualifications that MAC was looking for were a four-year degree, a broad-based accounting background, and managerial or supervisory experience.  Even if the court accepts that Kidd had all the other qualifications for being the Assistant Accounting Manager, there is no evidence in the record that Kidd had

auditing experience.  Accordingly, she was not qualified to perform the duties of the Assistant

Accounting Manager position.

Therefore, Kidd cannot satisfy her initial burden, under *McDonnell Douglas*, of proving

her prima facie case of discrimination.

## II. Pretext

Even if the court assumes that Kidd is able to establish a prima facie case for gender,

race, and national origin discrimination as to the hiring of Seo, Kidd still fails to demonstrate that

the legitimate, non-discriminatory reasons articulated by MAC are pretext for discrimination.

The main reason that MAC relies on is that Seo was better qualified than Kidd.  Seo's resume

shows that Seo had broad-based accounting experience, auditing experience, and a four-year

degree.  His testimony about his different positions make it clear that he had managerial and

supervisory experience.  Kidd attempts to rebut the contention that Seo was more qualified by

showing that she has a Bachelor's Degree with a double major in accounting and management,

that she completed her Master's Degree during her time at Mando, that she believes she absorbed

all of Anderson's duties, that other employees from MAC thought she assisted in managing the

accounting department, and that there were no complaints about her job performance.  Kidd also

explained that during the time that she was fulfilling Anderson's job she never received a raise or

a change in title; however, Kidd also asserts that MAC recognized her superior qualifications by

making Kidd the highest paid accountant.

In order to prove pretext in a failure to promote case, "the employee must come forward

with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons

14

given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771. "This evidence must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Id.* Moreover, Kidd "must show that the disparities between the successful applicant's and h[er] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)). Kidd simply has not met this burden.

Even assuming as true everything Kidd believed about her qualifications and her responsibilities after Anderson's departure from MAC, she does not establish pretext. None of the evidence cited by Kidd rebuts the fact that she lacked auditing experience and Seo had auditing experience. Kidd's own qualifications, even as she frames them, are not such that no reasonable person of impartial judgment could have chosen Seo over her. Moreover, Kidd's concerns about Seo's qualifications–that he misrepresented his managerial background and that he was essentially an auditor–are not enough to demonstrate pretext. The fact that Seo did not include the title manager or supervisor on his resume does not change the fact that his uncontroverted deposition testimony explains that he did in fact have such experience and that this information was given to MAC management during his interview. Kidd's belief that Seo allegedly misrepresented his credentials is simply not sufficient to allow a reasonable fact finder to conclude that the reasons given by MAC were pretext for discrimination.

15

Kidd also raises an argument that Seo was hired in contravention of federal immigration law.  However, the law cited by Kidd, 8 U.S.C. § 1188(a)(1), applies to the H-2A temporary agricultural workers visa program.  Not only is Seo not a temporary agricultural worker, but Seo's undisputed deposition testimony is that he hired an attorney to obtain a permanent resident visa for work.  The law cited by Kidd is wholly irrelevant to the present case, and her assertions that MAC "openly flouted the spirit of these laws" is meritless.  Moreover, Kidd's citation to *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 893 (1984), as providing strong language in support of her position, is not applicable to this case.  *Sure-Tan* dealt with a company which retaliated against its undocumented alien employees who joined a labor union by reporting them to the Immigration and Naturalization Service.  That case and the result of that case are also irrelevant to the present case.  Therefore, Kidd's reliance on MAC's alleged violation of immigration law does not serve to demonstrate that MAC's non-discriminatory, legitimate reason for hiring Seo was pretext for gender, race, or national origin discrimination.

Kidd also suggests statistical evidence to demonstrate how unlikely it would be for MAC to hire a Korean for this position given the number of Koreans in the world.  This fails to be persuasive, not only because of the flawed basis for determining the available pool for the job, but also because Kidd provides no citation for the statistical analysis she relies upon, but instead relies on "the opinions, allegations, and conclusory statements of counsel [which] do not substitute for evidence." *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) (citing *LeChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998)).  Moreover, Kidd's statistical assertion does not demonstrate that the requirement for auditing experience was somehow a pretext for gender, race, or national origin discrimination.

Kidd also relies on being told by Rolison that no Americans were considered for the job, but MAC supplied the court with documentary evidence of the other resumes it collected during its hiring process.  Kidd even cites one of these in her brief to demonstrate that a more qualified, in her opinion, non-Korean female applicant had been considered, but rejected by MAC. (Doc. # 54 at 36 n.14).  She discounts this evidence by saying that those candidates were considered on a parallel-illusory track to Seo, and are not proof that MAC considered anyone but Seo.  It is undisputed, however, that Rolison was not the decisionmaker in this case, and therefore, any comment about his hands being tied is irrelevant because he had no hand in the final decision as to whom to hire.

Moreover, Kidd points to perceived inconsistencies in Rolison's deposition testimony and affidavit in order to show pretext.  Specifically, Kidd alleges that Rolison was inconsistent as to whether anyone was interviewed before Seo, whether Kidd had been assigned to any extra duties after Anderson's termination, and whether Rolison lied about to whom he shows EEOC charges.  However, none of these allegations are supported by the record.  As to the inconsistencies concerning the interviews, Rolison's deposition testimony was that Scott Wren conducted interviews of three or four different candidates for the job, and that "I'm assuming Mr. Kwak was probably in those interviews." (Doc. # 49-1 at 28:4-5).  Rolison's affidavit says that Scott Wren conducted three to four phone calls with those applicants to gauge interest level in the job.  Mr. Kwak's deposition testimony was that he did not recognize the three to four resumes.  Given that Rolison said he assumed Kwak was involved, but was incorrect, and that his affidavit and deposition both explain that Scott Wren conducted the interaction with the three

17

to four applicants, there is not enough evidence to demonstrate the kind of inconsistency necessary to show pretext.

As to the alleged inconsistencies concerning Kidd's added duties after Anderson's firing, both Rolison's deposition and his affidavit use cautionary words about his knowledge concerning whether Kidd had taken on any more duties.  In his affidavit, Rolison says that Kidd "may" have taken on more work and in his deposition he said that he did not know.  It does not appear then that these two documents are inconsistent with one another.  It appears clear that Rolison could not unequivocally say that Kidd took over any new duties.  Lastly, as to the claim that Rolison was inconsistent about alerting Kwak about Kidd's EEOC charge, Rolison's affidavit says that he shares the charges with those in management that need to know.  Kwak says that Rolison showed it to him as he usually does.  The court does not see any inconsistency in these statements.  Accordingly, Kidd's attempts to find inconsistencies in Rolison's affidavit and deposition are not enough to demonstrate that MAC's non-discriminatory, legitimate reasons were pretext for gender, race, or national orientation discrimination.

While it is clear that Kidd truly believes that Kwak and Lee favored Korean men because they are Korean men, Kidd has failed to meet her burden to establish a prima facie case or to put forth evidence sufficient to show that MAC's stated reasons for hiring Seo were pretext for gender, race, or national origin discrimination against her.  Accordingly, the court will grant summary judgment in favor of MAC as to Kidd's Counts Two, Three, and Four.


D.  Retaliation Claim

Kidd's Count Five alleges retaliation on behalf of MAC against Kidd because she lodged complaints with the human resource department and the EEOC as to gender, race, and national origin discrimination by Seo and Cheong.  Kidd alleges that she was slowly relieved of her duties and suffered other adverse treatment after she filed the complaints.

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. Citiy of huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).  Even if the court were to find that Kidd has established the first and second prongs of this test[3], it is clear from the record evidence that Kidd cannot establish the third prong.

"The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  "However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Id.* (citing *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1355-56 (11th Cir. 1999)).  The evidence that Kidd has put forward to show causation relies entirely on the temporal relationship between her complaints and the alleged

---

[3] The court makes no representation that it does in fact find that Kidd has sufficiently proven that she engaged in protected activity or suffered an adverse employment action.

retaliatory behavior.  The problem with this argument for Kidd is that Seo's unrebutted

testimony is that he has never heard any complaints about discrimination nor has he ever seen

Kidd's EEOC charge.  Moreover, Kwak testified that he and Rolison talked about the EEOC

charge, and Kwak testified that his only communication to Seo concerned his managerial style.

Kwak testified that his critiques to Seo addressed Seo's tone of voice and the perceived rudeness

of his style of management, but never anything related to gender, race, or national origin

discrimination.  Rolison's testimony is substantially the same.  Rolison instructed Seo about

techniques to be a more effective manager and counseled Seo to work on his overly loud

speaking and mannerisms, but he never informed Seo about complaints of discrimination.

Kidd relies heavily on the fact that an inference could be drawn to demonstrate Seo's

knowledge, but there is nothing in the record to dispute that Seo simply did not know about

Kidd's discrimination complaints.  The Eleventh Circuit has ruled that " at the summary

judgment stage, 'implying' knowledge from temporal proximity despite the unrefuted testimony

of the decision maker that he knew nothing of the protected conduct means that we should allow

a factfinder to decide, without any basis other than temporal proximity, that the decision maker

is lying. . . . and we know from our *Clover* decision that we do not do that in Title VII cases." *Id.*

at  800.  Accordingly, Kidd's inference and implication that Seo knew about her internal

complaints and EEOC complaints simply do not rise to the level required to prove the causation

element of a prima facie case of retaliation.  *See Silvera v. Orange County Sch. Bd.*, 244 F.3d

1253, 1262 (11th Cir.2001) ("Discrimination is about actual knowledge, and real intent, not

constructive knowledge and assumed intent.").  Therefore, the court will grant summary

judgment in favor of MAC as to Kidd's Count V.

E.  State Law Claims

"The Court may decline to exercise jurisdiction over state-law claims, where the Court

has dismissed all the federal claims over which it has original jurisdiction." *McCulloch v. PNC

Bank Inc.*, 289 F.3d 1217, 1227 (11th Cir. 2002) (citing 28 U.S.C. § 1367(c)).  Because the court

has found that summary judgment is due to be granted as to all Kidd's claims for which the court

has original jurisdiction, the court declines to exercise supplemental jurisdiction as to the purely

state law claims.  Accordingly, Counts Six and Seven are dismissed without prejudice.


**V. CONCLUSION**

For the foregoing reasons, it is ordered as follows:

1.  Summary Judgment is GRANTED as to the Counts One, Two, Three, Four, and Five,
and judgment will be entered in favor of MAC as to these Counts.

2.  Pursuant to 28 U.S.C. § 1367(c), Counts Six and Seven are DISMISSED without
prejudice.


Done this 10th day of April, 2012.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE